134 Nev., Advance Opinion 81

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF NEVADA, A PUBLIC AGENCY, Appellant, vs. NEVADA POLICY RESEARCH INSTITUTE, INC., Respondent. | No. 72274 <br><br> **FILED** <br><br> OCT 18 2018 <br><br> ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a district court order granting a petition for a writ of mandamus concerning a public records request. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Affirmed in part, reversed in part, and remanded.*

McDonald Carano LLP and Adam D. Hosmer-Henner and Joshua J. Hicks, Reno,
for Appellant.

Joseph F. Becker, Reno,
for Respondent.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, DOUGLAS, C.J.:

In this appeal, we consider whether the Nevada Public Records Act (the Act) requires the Public Employees' Retirement System of Nevada

(PERS) to disclose certain employment and pension payment information about its government retirees held in its computer database when sought through a public records request. We hold that where the requested information merely requires searching a database for existing information, is readily accessible and not confidential, and the alleged risks posed by disclosure do not outweigh the benefits of the public's interest in access to the records, the Act mandates that PERS disclose the information. Because PERS represents that the computer database may no longer be able to produce the information as it existed when the public records request was made, we remand for the district court to determine an appropriate way for PERS to comply with the request.

## FACTS AND PROCEDURAL HISTORY

Respondent Nevada Policy Research Institute, Inc. (NPRI) submitted a public records request to appellant PERS seeking payment records of its government retirees, including retiree names, for the year 2014. NPRI sought to post this information on their TransparentNevada.com website for the public to view. Despite having previously disclosed the requested information to NPRI for the year 2013, PERS refused to disclose the requested information for the following year. PERS argued that the raw data feed that an independent actuary uses to analyze and value the retirement system did not contain the names of its government retirees, only redacted social security numbers, and it had no duty to create a new document in order to satisfy NPRI's request. NPRI alternatively requested any other records that would contain the following information for the year 2014: retiree name, years of service credit, gross pension benefit amount, year of retirement, and last employer. PERS still

refused to disclose the requested information by denying the availability of any such record.

NPRI filed a petition for a writ of mandamus in district court seeking retiree name, payroll amount, date of retirement, years of service, last employer, retirement type, original retirement amount, and COLA increases. NPRI asserted that the requested information is not confidential because it is a public record and is easily accessible through an electronic search of the PERS database. Following an evidentiary hearing, the district court concluded that the requested information was not confidential, that the risks posed by disclosure did not outweigh the benefits of the public's interest in access to these records, and that PERS had a duty to create a document with the requested information. Thus, the district court granted NPRI's petition and ordered disclosure. However, the district court ordered PERS to produce only retiree name, years of service credit, gross pension benefit amount, year of retirement, and last employer.

## DISCUSSION

PERS argues that the district court erred by requiring disclosure because the information was confidential, and the risks posed by disclosure outweigh the benefits of the public's interest in access to the records. It also argues that the district court's decision goes against this court's holding in *Public Employees' Retirement System of Nevada v. Reno Newspapers, Inc.* (*Reno Newspapers*), 129 Nev. 833, 313 P.3d 221 (2013), where we held that there is no duty "to create new documents or customized reports by searching for and compiling information from individuals' files or other records," *id.* at 840, 313 P.3d at 225, and that the narrow exception we subsequently created in *Las Vegas Metropolitan Police Department v. Blackjack Bonding, Inc.* (*Blackjack Bonding*), 131 Nev. 80, 343 P.3d 608 (2015), only applies where the records are under the control of a third party,

that third party can readily generate a report, and a report has been routinely generated in the past.

Conversely, NPRI argues that the information requested constitutes a public record under the Act because it is information that is stored on a governmental computer and that under *Blackjack Bonding*, PERS is required to disclose the information because the records are readily accessible and PERS has previously disclosed the information sought.

*Standard of review*

This court generally reviews a district court's decision to grant a writ petition for an abuse of discretion, but when the writ petition raises questions of statutory interpretation, this court reviews the district court's decision de novo. *City of Reno v. Reno Gazette-Journal*, 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003).

*The Nevada Public Records Act*

The Nevada Legislature enacted the Nevada Public Records Act to "foster democratic principles," NRS 239.001, and "promote government transparency and accountability by facilitating public access to information regarding government activities." *Reno Newspapers*, 129 Nev. at 836-37, 313 P.3d at 223; *Reno Gazette-Journal*, 119 Nev. at 59, 63 P.3d at 1149. To accomplish these goals of transparency and accountability, the Act provides that unless otherwise provided by statute or "declared by law to be confidential, all public books and public records of a governmental entity must be open at all times during office hours to inspection by any person, and may be fully copied . . . ." NRS 239.010(1).

 

We are cognizant of these important goals and, thus, have held that the Act's "provisions must be liberally construed to maximize the public's right of access," and "any limitations or restrictions on [that] access must be narrowly construed." *Reno Newspapers, Inc. v. Gibbons (Gibbons)*, 127 Nev. 873, 878, 266 P.3d 623, 626 (2011) (citing NRS 239.001(1)-(3)). In addition, there is a presumption in favor of disclosure, and the governmental entity in control of the requested information bears the burden of overcoming this presumption by demonstrating by a preponderance of the evidence that the requested information is confidential.[1] NRS 239.0113; *Reno Newspapers*, 129 Nev. at 837, 313 P.3d at 223-24. This burden may be met by either showing "that a statutory provision declares the record confidential or, in the absence of such a provision, that its interest in nondisclosure clearly outweighs the public's interest in access." *Reno Newspapers*, 129 Nev. at 837, 313 P.3d at 224 (internal quotation omitted). With this framework in mind, we turn to the parties' contentions.

*The requested information was not declared confidential by statute*

PERS argues that the district court's order would erroneously require PERS to extract information from government retirees' individual files that are protected by NRS 286.110(3) and NRS 286.117. According to PERS, these statutes would be rendered meaningless if the information contained in government retirees' files could be subject to disclosure. Because individual files of government retirees are confidential, PERS

---

[1]Neither party disputes that PERS is a governmental entity subject to the Act nor disputes that the requested information is subject to PERS' legal custody or control.

argues, so too should custom reports that are generated exclusively from these files.

As noted above, under the Act, public books and records of government entities are open to the public for inspection, "[e]xcept as otherwise provided" by statute or "otherwise declared by law to be confidential." NRS 239.010(1). In addition, official state records include "[i]nformation stored on magnetic tape or computer." NRS 239.005(6)(b). Among the statutes listed as providing a potential exception is NRS 286.110(3), which specifies that "[t]he official correspondence and records, *other than the files of individual members or retired employees*, and . . . the minutes, audio recordings, transcripts and books of [PERS] are public records and are available for public inspection." (Emphasis added.)[2] NRS

---

[2]PERS draws inapposite analogies to our recent decision in *City of Sparks v. Reno Newspapers, Inc.*, 133 Nev., Adv. Op. 56, 399 P.3d 352 (2017), to contend that because NRS 286.110(3) protects the government retirees' individual files from inspection, any report that extracts information from these files is confidential and not subject to disclosure. However, in *City of Sparks*, the applicable statute, NRS 453A.370(5), had conferred upon the agency the authority to protect certain information, and pursuant to this authority, the agency implemented regulations explicitly declaring the requested information to be confidential. 133 Nev., Adv. Op. 56, 399 P.3d at 358. Unlike the statute in *City of Sparks*, NRS 286.110(3) does not mandate that PERS affirmatively protect the type of information requested by NPRI. *Compare* NRS 286.110(3) (stating only that "official correspondence and records, other than the files of individual members or retired employees, . . . are public records and are available for public inspection"), *with* NRS 453A.370(5) (stating that the Division of Public and Behavioral Health of the Department of Health and Human Services "*must* . . . [a]s far as possible while maintaining accountability, *protect the identity and personal identifying information* of each person" (emphasis added)). Thus, NRS 286.110(3) does not clearly indicate that the Legislature has conferred upon the agency the authority to grant confidentiality to the requested information. *See Banegas v. State Indus.*

 

286.117 additionally requires the individual member or government retiree to submit a waiver in order to review or copy their records. As these latter statutes limit and restrict the public's right of access, we construe them narrowly.[3] NRS 239.001(2)-(3); *Gibbons*, 127 Nev. at 878, 266 P.3d at 626.

This court has previously addressed the scope of NRS 286.110(3). *See Reno Newspapers*, 129 Nev. at 838, 313 P.3d at 224. In *Reno Newspapers*, PERS denied Reno Newspapers' request "for the names of all individuals who are collecting pensions, the names of their government employers, their salaries, their hire and retirement dates, and the amounts of their pension payments" and "assert[ed] that the information was confidential pursuant to NRS 286.110(3) . . . and NRS 286.117." 129 Nev. at 835, 313 P.3d at 222. In opposing Reno Newspapers' writ petition seeking the requested information, "PERS submitted a declaration from its executive officer explaining that all information related to the individual files is maintained as confidential but that PERS provides an annual valuation of its system in aggregate form as a public record." *Id.* at 835-36, 313 P.3d at 223. We held that "NRS 286.110(3)'s scope of

---

*Ins. Sys.*, 117 Nev. 222, 227, 19 P.3d 245, 248 (2001) ("[T]he Legislature may authorize administrative agencies to make rules and regulations supplementing legislation *if the power given is prescribed in terms sufficiently definite to serve as a guide in exercising that power*." (emphasis added)).

[3]Contrary to this principle, PERS argues that we should defer to its broad interpretation of these statutes. While we will generally defer to an agency's interpretation of its governing statutes and regulations, we need only do so if its interpretation is *reasonable*. *See Collins Disc. Liquors & Vending v. State*, 106 Nev. 766, 768, 802 P.2d 4, 5 (1990). We reject PERS' contention because, as more fully discussed herein, its interpretation would contravene the very purpose of the Act. *See id.*

confidentiality does not extend to all information by virtue of it being contained in individuals' files" and that "PERS ha[d] not identified any statute, rule, or caselaw that would foreclose production of the requested information." *Id.* at 838, 313 P.3d at 224-25.

In *Reno Newspapers*, PERS released the requested information to a third party for an actuarial evaluation, which made the information clearly available outside of an individual's file. *See id.* at 838, 313 P.3d at 224 ("Where information is contained in a medium separate from individuals' files, including administrative reports generated from data contained in individuals' files, information in such reports or other media is not confidential merely because the same information is also contained in individuals' files."). Following our opinion in *Reno Newspapers*, PERS removed names from the spreadsheet it transmitted to the actuary. Then when NPRI made its public records request, PERS only turned over the spreadsheet consisting of the anonymous profiles. With only the information contained in the spreadsheet, NPRI could no longer match the payroll amounts and other information to the respective recipient of that retirement benefit. And, consequently, NPRI could no longer post the information in profile form, identified by the recipient's name, on its website.

Pointing to our discussion in *Reno Newspapers* of the "confidentiality" of the individual retiree files, and the fact PERS no longer generates the report ordered produced in that case, PERS maintains the information NPRI seeks does not exist outside the individual files and so is exempt from public disclosure. This reads our prior opinion and NRS 286.110(3) too broadly. While an individual retiree's physical file, which contains personal information such as social security numbers and

beneficiary designations, may not be inspected in its entirety, that does not make all the information kept in that file confidential when the information is stored electronically and PERS can extract the nonconfidential information from the individual files. Indeed, PERS has failed to cite to any rule, statute, or caselaw declaring the information requested to be confidential, and it has previously disclosed the information.

There are, in addition, compelling reasons that PERS cannot evade disclosure on this premise. PERS maintains over 55,000 individual files for its government retirees in its proprietary database, the Computer Automated Retirement System of Nevada (CARSON). To allow PERS to preclude the public by law from inspecting otherwise validly requested government information, particularly information that can *only* be obtained by requesting it from PERS, by virtue of PERS including the information in the individual retiree files that are in an electronic database, would contravene the plain language and purpose of the Act by "functionally plac[ing] [the CARSON] records . . . outside of the public records law."[4] *See Am. Civil Liberties Union*, 377 P.3d at 345; *see also* NRS 239.010(3); *Blackjack Bonding*, 131 Nev. at 84, 343 P.3d at 611 ("If the public record

---

[4]The dissent conflates the CARSON with the "individuals' files" to argue that the entire CARSON database is confidential. However, while the CARSON may be proprietary in nature, merely storing information in the CARSON does not render that information confidential. *See* 89-1 Op. Att'y Gen. 1, 3 (1989) ("Computer programs are intellectual property owned or licensed by the State and are not public records. Although most information stored by computer will, as with other forms of agency records, consist of public records, public inspection of particular information will still be subject to the case-by-case analysis . . . .") Additionally, for the reasons outlined herein, adopting the dissent's position would run contrary to our established caselaw interpreting the Act and would undermine the very purpose for which the Act was established.

contains confidential information that can be redacted, the governmental entity with legal custody or control of the record cannot rely on the confidentiality of that information to prevent disclosure of the public record."). Thus, PERS has failed to demonstrate that the requested information is confidential by statute.

We next assess PERS' alternative argument that, in the absence of a provision declaring the requested information confidential, its interest in nondisclosure clearly outweighs the public's interest in access.

*The district court did not err in concluding that the risks posed by disclosure of the requested information do not clearly outweigh the benefits of the public's interest in access*

PERS argues that the risks posed by disclosure of the requested information outweigh the benefits. In particular, PERS contends that disclosure of the government retirees' names creates a heightened risk of identity theft and cybercrime against the retirees and that these risks outweigh the marginal benefit to the public. PERS also argues that the district court did not take into consideration the government retirees' privacy interests. Conversely, NPRI contends that PERS' assertion that disclosure would subject its government retirees to a higher risk of fraud or cybercrime is hypothetical and speculative, and thus, the district court did not err in balancing the interests involved in favor of disclosure. We agree with NPRI's contention.

In *Reno Newspapers*, "PERS argue[d] that disclosure of the requested information would subject retired employees to a higher risk of identity theft and elder abuse." 129 Nev. at 839, 313 P.3d at 225. However, "[t]he record indicate[d] that the only evidence presented [below] to support PERS's argument was a PowerPoint presentation with statistics showing that Nevada is the third leading state in the number of fraud

 

complaints . . . and the sixth leading state in the number of identity theft complaints." *Id.* There, we concluded PERS failed to show that disclosure "would actually cause harm to retired employees or even increase the risk of harm," but rather, "the record indicate[d] that their concerns were merely hypothetical and speculative and did not clearly outweigh the public interest in disclosure." *Id.*; *see also Reno Newspapers, Inc. v. Haley*, 126 Nev. 211, 218, 234 P.3d 922, 927 (2010) ("A mere assertion of possible endangerment does not 'clearly outweigh' the public interest in access to these records." (internal quotation marks omitted)). Furthermore, "[t]o the extent some public employees may expect their salaries to remain a private matter, that expectation is not a reasonable one." *San Diego Cty. Emps. Ret. Ass'n v. Superior Court*, 127 Cal. Rptr. 3d 479, 489 (Ct. App. 2011) (quoting *Int'l Fed'n of Prof'l & Tech. Eng'rs, Local 21, AFL-CIO v. Superior Court*, 165 P.3d 488, 494 (Cal. 2007)). Indeed, "public employees lack a reasonable expectation of privacy in an expense the public largely bears after their retirement." *Id.*

Here, an expert report PERS provided from a technology and security advisor concluded that the inclusion of the government retirees' names in the raw data feed would create a greater risk for identity theft, fraud, or other cybercrime if the information was publicly released. However, given the limited nature of NPRI's requests, "their concerns [are] merely hypothetical and speculative . . . [and] [d]o not clearly outweigh the public's presumed right to access [the requested information]." *Reno Newspapers*, 129 Nev. at 839, 313 P.3d at 225. In addition, the government retirees lack a reasonable expectation of privacy in the requested information.

This does not mean that the risk of identity theft, fraud, or other cybercrime can never outweigh the benefits of the public's interest in access. If disclosure of a government retiree's information includes more sensitive personal information, such as birth date, sex, marital status, beneficiary information, and beneficiary birth dates, the balancing test may weigh in favor of nondisclosure. The requested information here, however, is limited in scope and helps promote government transparency and accountability by allowing the public access to information that could reveal, for example, if an individual is abusing retirement benefits. Given the strong presumption in favor of disclosure, PERS fails to demonstrate that the risks posed by disclosure outweigh the important benefit of public access. Thus, the district court did not err in concluding that the alleged risks posed by disclosure do not outweigh the benefits of the public's interest in access.

Having decided that the information is not confidential, we next determine whether requiring PERS to extract the information from the CARSON database is the creation of a new record.

*The requested information did not require the creation of a new record*

PERS further argues that *Reno Newspapers*, which recognized there is no duty "to create new documents or customized reports by searching for and compiling information from individuals' files or other records," *id.* at 838, 840, 313 P.3d at 224-25, precludes disclosure of the information sought because NPRI's request requires the creation of a new document.

Although PERS correctly notes that a public agency has no duty to create a new record in response to a public records request, it improperly concludes that disclosure in the present case requires the creation of a new record simply because it would involve searching its database for information. Several courts have distinguished between public records

SUPREME COURT
OF
NEVADA

(O) 1947A

requests that simply require an agency to search its electronic database in order to obtain the information requested from those that require the agency to compile a document or report *about* the information contained in the database. For example, in the context of Freedom of Information Act (FOIA) requests, a federal district court held that "[i]n responding to a FOIA request for 'aggregate data,' . . . an agency need not create a new database or [] reorganize its method of archiving data, but if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record." *Nat'l Sec. Counselors v. CIA (NSC I)*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012); *see also People for Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 14 (D.D.C. 2006) ("Electronic database searches are thus not regarded as involving the creation of new records." (quoting *Schladetsch v. HUD*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000))). As the *NSC I* court reasoned,

> sorting a pre-existing database of information to make information intelligible does not involve the creation of a new record because . . . computer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information. Sorting a database by a particular data field (e.g., date, category, title) is essentially the application of codes or some form of programming, and thus does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests.

898 F. Supp. 2d at 270 (internal quotation marks and citations omitted).

SUPREME COURT
OF
NEVADA

(O) 1947A

Other jurisdictions have employed similar logic when analyzing an agency's duty of disclosure under their respective public records laws. For example, in *American Civil Liberties Union v. Arizona Department of Child Safety*, the Arizona Court of Appeals held that "[s]earching an electronic database to produce existing records and data is not the same as searching an electronic database to compile information about the information it contains." 377 P.3d 339, 346 (Ariz. Ct. App. 2016). That court reasoned that "[w]hen a public employee fills out a form to obtain public records from, for example, a storage or file room, the employee has created a record to retrieve records that already exist. Creating a query to search an electronic database is functionally the same." *Id.* at 345. Thus, "Arizona's Public Records Law requires a state agency to query and search its database to identify, retrieve, and produce responsive records for inspection if the agency maintains public records in an electronic database." *Lunney v. State*, 418 P.3d 943, 950 (Ariz. Ct. App. 2017) (internal quotation marks omitted). "To hold otherwise would . . . functionally place most records maintained in public agency databases outside of the public records law." *Am. Civil Liberties Union*, 377 P.3d at 345 (internal quotation marks omitted); *see also Commonwealth, Dep't of Envtl. Prot. v. Cole*, 52 A.3d 541, 547 (Pa. Commw. Ct. 2012) ("[D]rawing information from a database does not constitute creating a record under the Right-to-Know Law.").

We agree with these courts and similarly hold that the Act requires a state agency to query and search its database to identify, retrieve, and produce responsive records for inspection if the agency maintains public records in an electronic database. In doing so, we clarify that the search of a database or the creation of a program to search for existing information is not the "creat[ion] [of] new documents or customized

 

reports," as contemplated by *Reno Newspapers*.[5] This comports with our holding in *Reno Newspapers*,[6] as well as our later holding in *Blackjack Bonding*, where we held that "when an agency has a computer program that can readily compile the requested information, the agency is not excused from its duty to produce and disclose that information." 131 Nev. 80, 87, 343 P.3d 608, 613 (2015). Similarly, if there is confidential information within the requested information, disclosure with the appropriate redactions would not constitute the creation of a new document or customized report. *See* NRS 239.010(3); *see also Stephan v. Harder*, 641 P.2d 366, 374 (Kan. 1982).

---

[5]The dissent argues that the creation of a computer program is not merely drawing information from a database, but rather, improperly requires the agency to conduct research. However, its reasoning ignores the realities of information storage in the digital age. As specifically recognized by the *NCI I* court, "computer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information." *See NCI I*, 898 F. Supp. 2d at 270 (internal quotation marks omitted).

[6]The dissent incorrectly suggests that we are overruling our previous holding in *Reno Newspapers*. We merely recognize the case-by-case application required in public records requests and clarify our earlier holding to reflect the realities of the advancements in technology and to further the purpose underlying the Act. *Reno Newspapers* did not need to address whether the requested information was confidential by virtue of it being contained within the CARSON database, because the information was released to a third party in a report. *See Reno Newspapers*, 129 Nev. at 838, 313 P.3d at 224 ("Where information is contained in a medium separate from individuals' files, including administrative reports generated from data contained in individuals' files, information in such reports or other media is not confidential merely because the same information is also contained in individuals' files."). Thus, this case requires us to answer a different question than *Reno Newspapers*: whether nonconfidential information in the CARSON database must be produced as public record.

 

Finally, PERS cannot evade disclosure on the basis that satisfying NPRI's public record request would require additional staff time and cost because PERS could charge NPRI for such an incurred fee. *See* NRS 239.052 (stating that "a governmental entity may charge a fee for providing a copy of a public record," and "[s]uch a fee must not exceed the actual cost to the governmental entity to provide the copy of the public record"); *see also* NRS 239.055(1) (stating that "if a request for a copy of a public record would require a governmental entity to make extraordinary use of its personnel or technological resources, the governmental entity may . . . charge a fee not to exceed 50 cents per page for such extraordinary use," and such a fee "must be reasonable and must be based on the cost that the governmental entity actually incurs for the extraordinary use of its personnel or technological resources").

The record indicates, however, that the CARSON database is not static, and PERS may not be able to obtain the information as it existed when NPRI requested it in 2014. We, therefore, reverse the district court's order to produce a document with the requested information and remand this case to the district court to determine how PERS should satisfy NPRI's request and how the costs, if any, of producing the information at this time should be split.

 

## CONCLUSION

We conclude that searching PERS' electronic database for existing and nonconfidential information is not the creation of a new record and therefore affirm the district court's order in this regard. But because the record demonstrates that PERS may no longer be able to obtain the requested information as it existed in 2014 by searching the CARSON database, we reverse the district court's order to produce the 2014 information and remand this matter for proceedings consistent with this opinion as to production of information.

_____, C.J.
Douglas

We concur:

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

Supreme Court
of
Nevada

(O) 1947A

STIGLICH, J., with whom HARDESTY and PARRAGUIRRE, JJ., agree, dissenting:

Five years ago, this court held that PERS had no duty "to create new documents or customized reports by searching for and compiling information from individuals' files or other records." *Pub. Emps.' Ret. Sys. of Nev. v. Reno Newspapers, Inc.*, 129 Nev. 833, 840, 313 P.3d 221, 225 (2013). The majority's decision today cannot be reconciled with that opinion or the Public Records Act as it is written. Before today, an agency's duty under the Public Records Act was limited to disclosing *existing* public records. After today, they will have a duty to *create* records so long as a court determines that the agency has the technology to readily compile the requested information. While I understand the temptation to expand agencies' duties under the Public Records Act, I believe that such an expansion is for the Legislature—not this court—to make. Accordingly, I dissent.

*Background*

My disagreement with the majority is largely a factual one. To highlight it, I clarify the three categories of documents at issue in this case. First are retirees' individual files contained in the CARSON database. Those files are confidential pursuant to NRS 286.110(3).[1] But the

---

[1]The majority relies upon *American Civil Liberties Union v. Arizona Department of Child Safety* for the proposition that declaring the CARSON records confidential places those records "outside of the public records law." 377 P.3d 339, 345 (Ariz. Ct. App. 2016) (internal quotation marks omitted). The majority fails to recognize that it is the Nevada Legislature—not I— that exempted CARSON files from the Public Records Act. NRS 286.110(3) (exempting "files of individual members or retired employees"). Curiously, the majority cites and correctly analyzes NRS 286.110(3) but then fails to apply it to the CARSON database.

SUPREME COURT
OF
NEVADA

(O) 1947A

information contained within those files is not confidential *to the extent* that it appears within some other non-confidential public record. *See Reno Newspapers*, 129 Nev. at 835, 313 P.3d at 222 ("Although . . . individual files have been declared confidential by statute and are thereby exempt from requests pursuant to the Act, other reports that PERS generates based on information contained in the files are not similarly protected by NRS 286.110(3).").

The second category of documents is PERS' monthly payment register reports. Those reports contain both retirees' names and social security numbers. PERS provided at least one such report to NPRI after redacting the social security numbers.

The third and last category of documents are the raw data feeds that PERS produces annually for actuarial purposes. The 2013 data feed contained retirees' names and the pension amount each retiree received. We held in *Reno Newspapers* that PERS had to disclose that report, including the names of retirees. 129 Nev. at 840, 313 P.3d at 225. Possibly, in response to our holding in that case, PERS created its 2014 data feed using numerical identifiers for retirees rather than their names. PERS provided that 2014 report to NPRI.

The upshot is that NPRI now possesses a list of every retiree's name and a separate list of payments to anonymized retirees, but NPRI has no way of linking names to payments. Thus, NPRI cannot update its website with a list of retirees and the amount of pension each received in 2014. The district court solved NPRI's problem by ordering PERS to add retirees' names to the 2014 data feed.

 

I.

My first objection with the majority's decision is that it overrules *Reno Newspapers*. The facts of that case are nearly identical to the present one: A plaintiff requested several categories of information from PERS, including the names of all Nevada state pensioners and the amount of their pensions. 129 Nev. at 834-35, 313 P.3d at 222. Some or all of that information was contained within two documents: retirees' individual files in the CARSON database and the 2013 raw data feed. This court rejected PERS' contention that the information was confidential solely because it was contained within individuals' confidential files. *Id.* at 838, 313 P.3d at 224. We therefore required PERS "to provide the requested information *to the extent that* it is maintained in a medium separate from individuals' files." *Id.* at 839, 313 P.3d at 225 (emphasis added). But we clarified: "However, to the extent that the district court ordered PERS to create new documents or customized reports by searching for and compiling information from individuals' files or other records, we vacate the district court's order." *Id.* at 840, 313 P.3d at 225. That holding was subsequently codified in NAC 239.867: "If a person requests to inspect, copy or receive a copy of a public record that does not exist, a records official or agency of the Executive Department is not required to create a public record to satisfy the request."

Applying *Reno Newspapers* to the present case is straightforward. NPRI requested a record containing pensioners' names and the amount of their pensions for the 2014 fiscal year. *No such record exists.* That is because, unlike the 2013 report at issue in *Reno Newspapers*, the 2014 raw data feed does not contain names. The only way PERS can

create such a record—assuming it *can* create such a record[2]—is to extract information from retirees' files contained in the CARSON database. That is precisely what *Reno Newspapers* prohibited. 129 Nev. at 840, 313 P.3d at 225 (holding that PERS cannot be ordered "to create new documents or customized reports by searching for and compiling information from individuals' files"). Yet it is precisely what the majority orders today: PERS is required "to query and search its database to identify, retrieve, and produce responsive records for inspection if the agency maintains public records in an electronic database."

Rather than distinguishing *Reno Newspapers*, the majority cites cases from mostly foreign jurisdictions for the proposition that the district court's order merely requires PERS to "to search its electronic database" but does not "require the agency to compile a document or report *about* the information contained in the database." This distinction fails for two reasons.

First, the district court's order goes far beyond requiring PERS "to search its electronic database." Contrary to the majority's conclusory assertion, calling this a "search" does not comport with *Las Vegas Metropolitan Police Department v. Blackjack Bonding, Inc.*, wherein we held that "when an agency has a computer program that can readily compile the

---

[2]The 2013 raw data feed contained retirees' names, so PERS was able to provide the requested information simply by providing an unredacted version of that data feed. By contrast, to add names to the 2014 feed, PERS will have to extract names from the current CARSON database, which has changed since 2014. The majority concedes as much.

requested information, the agency is not excused from its duty to produce and disclose that information." 131 Nev. 80, 87, 343 P.3d 608, 613 (2015). Unlike the agency's contractor in *Blackjack*, PERS does *not* have a "computer program that can readily compile the requested information." *Id*. Rather, to comply with the district court's order, PERS must *create* a computer program to link information from the 2014 data feed to the current CARSON database. Moreover, ordering PERS to add information to the 2014 raw data feed is tantamount to ordering PERS to create a customized record. The *Blackjack* court did not order the agency to create anything of this sort—it merely required the agency to produce the requested information, which was readily accessible and did not require compiling information from the individual files. *Id*. at 87, 343 P.3d at 613-14. "An agency is not required to organize data to create a record that doesn't exist at the time of the request, but may do so at the discretion of the agency if doing so is reasonable." Nev. State Library, Archives & Pub. Records, *Nevada Public Records Act: A Manual for State Agencies* 5 (2014); NAC 239.869 ("adopt[ing] by reference the *Nevada Public Records Act: A Manual for State Agencies*, 2014 edition").

The cases cited by the majority do not impose such an expansive duty upon agencies. Creating a computer program is not merely "drawing information from a database." *Commonwealth, Dep't of Envtl. Prot. v. Cole*, 52 A.3d 541, 547 (Pa. Commw. Ct. 2012). Rather, such action requires the agency to "conduct research," *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012), and go beyond its duty under the Public Records Act, *see, e.g.*, *People for Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 14 (D.D.C. 2006) ("It is well-settled that . . . FOIA applies only to records which have in fact [been] obtained . . . not to records which merely

could have been obtained." (second and third alterations in original) (internal quotation marks omitted)); *see also Frank v. U.S. Dep't of Justice*, 941 F. Supp. 4, 5 (D.D.C. 1996) (holding that agencies are "not required, by FOIA or by any other statute, to dig out all the information that might exist, in whatever form or place it might be found, and to *create* a document that answers plaintiff's question" (emphasis in original)).

Second, even if this were a mere "search" of the CARSON database, *that database is confidential*, and a court cannot order PERS to "search[ ] for and compil[e] information from individuals' files." *Reno Newspapers*, 129 Nev. at 840, 313 P.3d at 225. Again, the majority's error stems from a factual confusion. The majority is correct that neither 2014 retiree names nor 2014 pension amounts are confidential, because both sets of information are contained within public documents—namely, the monthly payment register report (names) and the 2014 raw data feed (pension amounts). *See Reno Newspapers*, 129 Nev. at 839, 313 P.3d at 225 (holding that retiree information is not confidential "to the extent that it is maintained in a medium separate from individuals' files"). But no public report *links* retiree names to the amount of pension that each retiree receives. That information is contained exclusively within retirees' individual files in the CARSON database. Those files are confidential pursuant to NRS 286.110(3), and PERS cannot be ordered to extract information contained *exclusively* within them. *Reno Newspapers*, 129 Nev. at 840, 313 P.3d at 225.

Further, to the extent that the majority suggests that an agency can now search the CARSON database pursuant to NRS 239.005(6)(b), this

suggestion is misplaced as a matter of law. NRS 239.005(6)(b) merely defines "official state record" to include, in pertinent part, "information stored on magnetic tape or computer." NRS 239.005(6)(b) is not in conflict with NRS 286.110(3), because nothing in the statutory scheme suggests that a state record deemed confidential under NRS 286.110(3) would lose its confidential character merely because of the medium in which it is stored.

## II.

My second objection to the majority's decision is that it amounts to a judicial transformation of the Public Records Act. The majority of this court agrees with NPRI and the district court that disclosure of that information is in the public interest, and that PERS has the technology to readily compile the requested information, so it imposes a duty upon PERS to create a customized report containing the requested information.[3] But that is not how the Public Records Act is written. *See* NRS 239.010(1) (providing that "all public books and public records of a governmental agency must be open at all times during office hours to inspection"). The Legislature, no doubt, had the option of creating an act along the lines of what the majority holds today—that is, one requiring agencies to create

---

[3]The majority, like the district court below, appears to fault PERS for removing pensioners' names from its 2014 raw data feed following our decision in *Reno Newspapers*. I am perplexed as to why PERS should be faulted for adhering to this court's decision while simultaneously protecting pensioners' information to the greatest extent possible.

customized reports whenever a court determines that the agency has the technology to readily compile the requested information. The Legislature declined to write such an act, perhaps because it would give an inordinate amount of discretion to courts, who, as this case demonstrates, are not adept at making such technological determinations.

In sum, the majority's opinion today contravenes the plain language of the Public Records Act, it directly violates NRS 286.110(3), it exposes official state records otherwise declared confidential to agency search simply because they are stored on a computer, it inexplicably departs from *stare decisis* by overruling *Reno Newspapers*, and it sets Nevada apart from other jurisdictions that have considered this issue. I see no reason to depart so drastically from these binding and persuasive authorities.

Therefore, I dissent.

_____, J.
Stiglich

We concur,

_____, J.
Hardesty

_____, J.
Parraguirre