RENO NEWSPAPERS, INC., A NEVADA CORPORATION, APPELLANT, *v.* JIM GIBBONS, GOVERNOR OF THE STATE OF NEVADA, AND THE STATE OF NEVADA, EX REL. OFFICE OF THE GOVERNOR OF THE STATE OF NEVADA, RESPONDENTS.

No. 53360

December 15, 2011                                    266 P.3d 623

*Burton, Bartlett & Glogovac* and *Scott A. Glogovac*, Reno, for Appellant.

*Catherine Cortez Masto*, Attorney General, and *James T. Spencer*, Chief of Staff, Carson City, for Respondents.

Before the Court En Banc.

# OPINION

By the Court, Saitta, C.J.:

This appeal involves the denial of a records request made pursuant to the Nevada Public Records Act (NPRA). The primary issue we are asked to resolve is whether, after the commencement of a public records lawsuit, the state entity withholding the requested records is required to provide the requesting party with a

log containing a factual description of each withheld record and a legal basis for nondisclosure. We conclude that based upon the provisions of the NPRA, our NPRA jurisprudence, and elementary notions of fairness inherent in our adversarial system, the requesting party generally is entitled to a log. In most cases, this log should contain, at a minimum, a general factual description of each withheld record and a specific explanation for nondisclosure. Here, we conclude that such a log was required and that the district court erred to the extent it denied the request for a log.

We also address what the state entity withholding the requested records is required to provide to the requesting party in prelitigation situations. We conclude that, as mandated by NRS 239.0107(1)(d), if a state entity denies a public records request prior to the commencement of litigation, it must provide the requesting party with notice of its claim of confidentiality and citation to legal authority that justifies nondisclosure. Here, we conclude that the state entity withholding the requested records failed to satisfy these responsibilities.

## FACTS AND PROCEDURAL HISTORY

Appellant Reno Newspapers, Inc., is a Nevada corporation doing business as the Reno Gazette-Journal (RGJ). Respondents are Jim Gibbons, former Governor of the State of Nevada, and the State of Nevada (collectively, the State). In 2008, the RGJ made a records request, pursuant to the NPRA, for e-mail communications sent over a six-month time period between Governor Gibbons and ten individuals. The request specified that the e-mails being sought were transmitted to or from Governor Gibbons' state-issued e-mail account. In the event that the State rejected the request, the RGJ asked that it be provided a log identifying, for each e-mail, the sender, all recipients, the message date, and the legal basis upon which the State was denying access. The State denied the RGJ's request for the e-mails or a log. Citing to our decision in *DR Partners v. Board of County Commissioners*, 116 Nev. 616, 6 P.3d 465 (2000), California caselaw, a Nevada Attorney General Opinion, and the State of Nevada Policy on Defining Information Transmitted via E-mail as a Public Record,[1] the State informed the RGJ that all of the requested e-mails were confidential because they were either privileged or not considered public records. The RGJ repeated its request for a log containing a description of each individual e-mail so that it could assess whether to challenge the State's classification of the e-mails as confidential. The State again denied the RGJ's request.

---

[1]This policy provides state employees with informal guidelines on how to determine if a given e-mail is a public record and describes procedures for dealing with e-mails classified as public records. For example, it indicates that public records should not be deleted.

Thereafter, the RGJ filed a petition for a writ of mandamus in the district court seeking access to the e-mails or, in the alternative, to receive a detailed log or index identifying the sender, recipient(s), date, subject matter, and the basis upon which the State was denying access to each of the total 104 requested e-mails. Ultimately, after conducting a hearing to consider the RGJ's petition and an in camera review of the e-mails, the district court denied the RGJ's request for a detailed log or index, reasoning that given the brevity of some of the e-mails, such a log or index would disclose otherwise confidential information. The district court then determined that, of the 104 requested e-mails, 24 were personal in nature, 32 were of a transitory nature, 42 were of a transitory nature and/or covered by the deliberative process privilege, and 6 were not confidential. The district court therefore granted the petition as to the 6 e-mails that it determined were not confidential and denied the petition as to the remaining 98 e-mails. The RGJ filed this appeal.[2]

## DISCUSSION

Although the district court's denial of a writ petition is ordinarily reviewed for an abuse of discretion, when, as here, the petition entails questions of law, we review the district court's decision de novo. *Reno Newspapers v. Sheriff*, 126 Nev. 211, 214, 234 P.3d 922, 924 (2010).

### *The district court erred in denying the RGJ's request for a log*

The RGJ's primary contention on appeal is that the district court erred in refusing to order the State to provide it with a detailed log describing the factual nature of each withheld e-mail and the legal basis for nondisclosure so that it could make an informed decision regarding whether to challenge the State's claim of confidentiality. We begin our analysis of this contention by providing an overview of the NPRA and our jurisprudence regarding claims of confidentiality made in response to public records requests.

#### *Overview of the NPRA*

The NPRA provides that all public books and public records of governmental entities must remain open to the public, unless "otherwise declared by law to be confidential." NRS 239.010(1). The Legislature has declared that the purpose of the NPRA is to further the democratic ideal of an accountable government by ensuring that

---

[2]The State did not file a cross-appeal challenging the district court's issuance of the writ of mandamus with respect to 6 of the requested e-mails. As such, our consideration of this appeal is limited to whether the district court erred in denying the RGJ's writ petition as to the 98 remaining e-mails.

public records are broadly accessible. NRS 239.001(1). Thus, the provisions of the NPRA are designed to promote government transparency and accountability.

In 2007, in order to better effectuate these purposes, the Legislature amended the NPRA to provide that its provisions must be liberally construed to maximize the public's right of access. NRS 239.001(1)-(2); 2007 Nev. Stat., ch. 435, § 2, at 2061. Conversely, any limitations or restrictions on the public's right of access must be narrowly construed. NRS 239.001(3); 2007 Nev. Stat., ch. 435, § 2, at 2061. In addition, the Legislature amended the NPRA to provide that if a state entity withholds records, it bears the burden of proving, by a preponderance of the evidence, that the records are confidential. NRS 239.0113; 2007 Nev. Stat., ch. 435, § 5, at 2062.

### Overview of our NPRA jurisprudence

In *Donrey of Nevada v. Bradshaw*, 106 Nev. 630, 798 P.2d 144 (1990), we built the foundation for analyzing claims of confidentiality made in response to NPRA requests. *Bradshaw* involved a request from KOLO-TV and Reno Newspapers for a police investigative report into bribery of a public official. *Id.* at 631, 798 P.2d at 145. The Reno City Attorney's Office and the Reno Police Department refused the request. *Id.* KOLO-TV and Reno Newspapers subsequently filed a petition for a writ of mandamus in the district court, asserting that the NPRA required the disclosure of the investigative report. *Id.* at 632, 798 P.2d at 145. The district court denied the petition, determining that the report was confidential based upon NRS Chapter 179A, which contains provisions concerning the dissemination of criminal history records. *Id.* It also determined that no balancing of the interests involved was needed. *Id.*

On appeal, we determined that the confidentiality provisions contained in NRS Chapter 179A did not cover the record at issue. *Id.* at 634, 798 P.2d at 147. As a consequence, we explained that "a balancing of the interests involved is necessary" before any common-law limitations on disclosure could be applied. *Id.* at 635, 798 P.2d at 147. Under this balancing test, we concluded that the investigative report should be released to KOLO-TV and Reno Newspapers. *Id.* at 636, 798 P.2d at 148. Our conclusion was based on the facts that no criminal proceeding was pending or anticipated, no confidential sources or investigative techniques were contained in the report, there was no possibility of denying anyone a fair trial, and disclosure did not jeopardize law enforcement personnel. *Id.* We therefore directed the district court to issue a

writ of mandamus ordering the City Attorney's Office and the Reno Police Department to release the report. *Id.*

We expanded upon *Bradshaw*'s consideration of claims of confidentiality in *DR Partners v. Board of County Commissioners*, 116 Nev. 616, 6 P.3d 465 (2000). *DR Partners* concerned the Las Vegas Review Journal's attempt to compel the disclosure of billing statements documenting county officials' use of publicly owned cellular telephones. *Id.* at 619, 6 P.3d at 467. Clark County released the records but redacted portions of the incoming and outgoing telephone numbers, thereby preventing any person reviewing the statements from determining the identity of the individuals with whom conversations occurred. *Id.* The Review Journal filed a petition for a writ of mandamus in the district court seeking to compel Clark County to disclose the records. *Id.* at 620, 6 P.3d at 467. The district court denied the petition, *id.*, determining that the records were confidential based upon the common-law deliberative process privilege. *Id.* at 619, 6 P.3d at 467.

On appeal, we first set forth the requirements for showing that the deliberative process privilege applies—namely, that the withheld records be both "predecisional" and "deliberative." *Id.* at 623, 6 P.3d at 469. We also reiterated that when the requested record is not explicitly made confidential by a statute, the balancing test set forth in *Bradshaw* must be employed, explaining that "[i]n *Bradshaw*, this court, at least by implication, recognized that any limitation on the general disclosure requirements of NRS 239.010 must be based upon a balancing or 'weighing' of the interests of non-disclosure against the general policy in favor of open government." *Id.* at 622, 6 P.3d at 468. We then concluded that even if the deliberative process privilege applied to the records at issue, the absence of a particularized evidentiary showing by Clark County "prevented the district court from engaging in the weighing process mandated by *Bradshaw*." *Id.* at 627, 6 P.3d at 472. We therefore reversed the district court's order denying the writ and remanded the case to the district court to issue the writ compelling Clark County to provide the Review Journal with unredacted copies of the requested records. *Id.* at 628-29, 6 P.3d at 473.

We recently considered a claim of confidentiality made in response to an NPRA request in *Reno Newspapers v. Sheriff*, 126 Nev. 211, 212, 234 P.3d 922, 923 (2010), where we concluded that the identity of a holder of a concealed firearms permit and records of any post-permit investigation, suspension, or revocation of such a permit are public records subject to disclosure unless the requested records contain confidential information. In reaching this conclusion, we explained that under the NPRA, "all public

records generated by government entities are public information and are subject to public inspection unless otherwise declared to be confidential.'' *Id.* at 214, 234 P.3d at 924. We also emphasized that under the NPRA, ''open records are the rule,'' and any nondisclosure of records is the exception. *Id.* at 216-18, 234 P.3d at 926. Furthermore, we explained that by virtue of the 2007 amendments to the NPRA, ''the balancing test under *Bradshaw* now requires a narrower interpretation of private or government interests promoting confidentiality or nondisclosure to be weighed against the liberal policy for an open and accessible government.'' *Id.* More specifically, in order for requested records to be withheld under this balancing test, the state entity bears the burden to prove that its interest in nondisclosure ''clearly outweighs the public's right to access.'' *Id.* at 219, 234 P.3d at 927. We concluded that the withholding entity failed to meet this burden because it presented no evidence to support its claim that releasing the records would increase crime or expose permit holders or the public to harm. *Id.* Finally, while we acknowledged that portions of the records made available for public inspection might contain confidential information, we concluded that such portions should simply be redacted. *Id.* at 219-20, 234 P.3d at 928.

Our jurisprudence has therefore established a framework for testing claims of confidentiality under the backdrop of the NPRA's declaration that its provisions ''must be construed liberally'' to facilitate access to public records, NRS 239.001(2), and that any restrictions on access ''must be construed narrowly.'' NRS 239.001(3). First, we begin with the presumption that all government-generated records are open to disclosure. *See Reno Newspapers v. Sheriff*, 126 Nev. at 214, 234 P.3d at 924; *DR Partners*, 116 Nev. at 621, 6 P.3d at 468. The state entity therefore bears the burden of overcoming this presumption by proving, by a preponderance of the evidence, that the requested records are confidential. NRS 239.0113; *DR Partners*, 116 Nev. at 621, 6 P.3d at 468. Next, in the absence of a statutory provision that explicitly declares a record to be confidential, any limitations on disclosure must be based upon a broad balancing of the interests involved, *DR Partners*, 116 Nev. at 622, 6 P.3d at 468; *Bradshaw*, 106 Nev. at 635, 798 P.2d at 147, and the state entity bears the burden to prove that its interest in nondisclosure clearly outweighs the public's interest in access. *Reno Newspapers v. Sheriff*, 126 Nev. at 219, 234 P.3d at 927. Finally, our caselaw stresses that the state entity cannot meet this burden with a nonparticularized showing, *DR Partners*, 116 Nev. at 627-28, 6 P.3d at 472-73, or by expressing hypothetical concerns. *Reno Newspapers v. Sheriff*, 126 Nev. at 218-19, 234 P.3d at 927.

*After the commencement of an NPRA lawsuit, the state entity withholding requested records is generally required to provide the requesting party with a log*

With the foregoing principles in mind, we turn to the RGJ's assertion that because the district court did not order the State to provide it with a log describing each e-mail withheld, it could not meaningfully assess and challenge the State's claim that the requested e-mails were confidential. It urges us to adopt a rule whereby each time that a state entity asserts that requested records are confidential, the state entity must provide the requesting party with a log in the form of a *"Vaughn* index" as described in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). The RGJ contends that without a *Vaughn* index, the requesting party is at a severe disadvantage in NPRA cases because it otherwise lacks the necessary information to meaningfully advocate for disclosure.

A *Vaughn* index is a submission commonly utilized in cases involving the Freedom of Information Act (FOIA), the federal analog of the NPRA. This submission typically contains "detailed public affidavits identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." *Lion Raisins v. U.S. Dept. of Agriculture*, 354 F.3d 1072, 1082 (9th Cir. 2004). Broadly stated, a *Vaughn* index is designed to preserve a fair adversarial proceeding when a lawsuit is brought after the denial of a FOIA request. *See Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991) ("The purpose of the index is to 'afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" (quoting *King v. U.S. Dept. of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987))).

While we agree that the RGJ should have been provided with a log under the circumstances of this case, we disagree that this log was required to be in the specific form of a *Vaughn* index or that a log is required each time records are withheld. As federal courts have explained when considering the FOIA, although a *Vaughn* index is often a vital method for resolving the tension between the government's interest in keeping certain records confidential and the requesting party's need for enough information to meaningfully contest a claim of confidentiality, "a *Vaughn* index . . . is [not] necessarily required in all cases." *Fiduccia v. U.S. Dept. of Justice*, 185 F.3d 1035, 1042-43 (9th Cir. 1999). Indeed, even the authority that the RGJ relies upon recognizes that a *Vaughn* index is not required in all FOIA cases. *See, e.g.*, *Wiener*, 943 F.2d at 978 n.5 (discussing circumstances in which a *Vaughn* index was not required). For instance, when the requesting party "has sufficient in-

formation to present a full legal argument, there is no need for a *Vaughn* index." *Minier v. Central Intelligence Agency*, 88 F.3d 796, 804 (9th Cir. 1996); *see Wiener*, 943 F.2d at 978 n.5 ("Consistent with its purpose, a *Vaughn* index is not required where it is not needed to restore the traditional adversary process."); *Brown v. Federal Bureau of Investigation*, 658 F.2d 71, 74 (2d Cir. 1981) ("[W]hen the facts in plaintiff's possession are sufficient to allow an effective presentation of its case, an itemized and indexed justification of the specificity contemplated by *Vaughn* may be unnecessary."). Moreover, if we were to require a log—in the form of a *Vaughn* index or otherwise—each time a lawsuit is brought after the denial of an NPRA request, we would essentially be rewriting the NPRA because it imposes no such unqualified requirement.

Nonetheless, the provisions of the NPRA place an unmistakable emphasis on disclosure. The NPRA expressly provides that its provisions "must be construed liberally" to ensure the presumption of openness and explicitly declares that any restriction on disclosure "must be construed narrowly." NRS 239.001(2)-(3). In harmony with the overarching purposes of the NPRA, the burden of proof is imposed on the state entity to prove that a withheld record is confidential. NRS 239.0113. Equally unmistakable is the emphasis that our NPRA jurisprudence places on adequate adversarial testing. Indeed, the framework established in *Bradshaw*, *DR Partners*, and *Reno Newspapers v. Sheriff* exemplifies an intensely adversarial method for determining whether requested records are confidential.

In view of the emphasis placed on disclosure and the importance of testing claims of confidentiality in an adversarial setting, we agree with the *Vaughn* court that "it is anomalous" and inequitable to deny the requesting party basic information about the withheld records, thereby relegating it to advocating from a nebulous position where it is powerless to contest a claim of confidentiality. 484 F.2d at 823. Furthermore, requiring the requesting party to blindly argue for disclosure not only runs contrary to the spirit of the NPRA and our NPRA jurisprudence but it "seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Id.* at 824. In sum, a claim that records are confidential can only be tested in a fair and adversarial manner, and in order to truly proceed in such a fashion, a log typically must be provided to the requesting party.

We therefore conclude that after the commencement of an NPRA lawsuit, the requesting party generally is entitled to a log unless, for example, the state entity withholding the records demonstrates that the requesting party has sufficient information to

meaningfully contest the claim of confidentiality without a log. We decline to spell out an exhaustive list of what such a log must contain or the precise form that this log must take because, depending on the circumstances of each case, what constitutes an adequate log will vary. *See Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987) (stressing that "it is the function, not the form, of the index that is important"). For purposes of this opinion, it is sufficient to simply explain that in most cases, in order to preserve a fair adversarial environment, this log should contain, at a minimum, a general factual description of each record withheld and a specific explanation for nondisclosure.[3]

The State asserts that it was not required to provide the RGJ with a log because the district court conducted an in camera review of the requested e-mails. It further asserts that an in camera review is the optimal method for the district court to review claims of confidentiality while protecting confidential information from being disclosed.

In and of itself, an in camera review is not improper. *See Griffis v. Pinal County*, 156 P.3d 418, 422 (Ariz. 2007) ("In camera review . . . reinforces [the notion] that the courts, rather than government officials, are the final arbiter of what qualifies as a public record."). An in camera review, however, is not a replacement for a log when a log is necessary to preserve a fair adversarial proceeding. *See Wiener*, 943 F.2d at 979 (explaining that an in camera review of withheld records "is not an acceptable substitute" for an adequate log because "[*i*]*n camera* review does not permit

---

[3]We caution that in this log, the state entity withholding records "need not specify its objections in such detail as to compromise the secrecy of the information." *Church of Scientology, Etc. v. U.S. Dept.*, 611 F.2d 738, 742 (9th Cir. 1979). The district court nonetheless must require the state entity to provide the requesting party an explanation for nondisclosure "in as much detail as possible on the public record before resorting to *in camera* review." *Lion Raisins v. U.S. Dept. of Agriculture*, 354 F.3d 1072, 1084 (9th Cir. 2004). Thus, in the instant matter, the district court may very well be correct that given the brevity of some of the requested e-mails, an extensive log might disclose otherwise confidential information. The district court nonetheless should have required the State to provide the RGJ with a log containing as much information as possible before resorting to an in camera review.

Furthermore, we are cognizant that requiring an individual description of each requested record may become overly burdensome when the requesting party seeks access to several hundred records. In such a circumstance, a log providing a representative sampling of the larger group of records may be appropriate. *See Bonner v. U.S. Dept. of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991) ("Representative sampling is an appropriate procedure to test an agency's FOIA exemption claims when a large number of documents are involved."). A log containing only representative samples of the requested e-mails, however, would likely not be appropriate here given the relatively limited number of e-mails involved.

effective advocacy''); *Church of Scientology, Etc. v. U.S. Dept.*, 611 F.2d 738, 743 (9th Cir. 1979) (in camera review is ''not a substitute for the government's burden of proof, and should not be resorted to lightly''). In other words, an in camera review may be used to supplement a log but it may not be used as a substitute when a log is necessary to preserve a fair adversarial proceeding.

Here, the State responded to the RGJ's petition for a writ of mandamus[4] by providing the district court with the e-mails claimed to be confidential, as well as a log. The State, however, did not provide the RGJ with a log of any type containing a general factual description of these e-mails and a specific explanation of why each e-mail was confidential, nor did the State demonstrate that the RGJ possessed sufficient information to argue for disclosure without a log. Thus, the State's response was, in a word, deficient. Accordingly, we conclude that the district court erred in denying the RGJ's request for a log containing a general factual description of each of the records withheld and a specific explanation for nondisclosure.[5]

*The State failed to satisfy its prelitigation duties under the NPRA*

The RGJ contends that the State also failed to satisfy its prelitigation duties under the NPRA. In particular, it asserts that the state entity denying an NPRA request prior to the commencement of litigation is required to provide the requesting party with a *Vaughn* index.

We decline to adopt the *Vaughn* index as a prelitigation requirement under the NPRA. First, a *Vaughn* index is not required outside of the litigation context. *See Natural Resources Defense Council, Inc. v. N.R.C.*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). But,

---

[4]We note that mandamus was the appropriate procedural vehicle for the RGJ to seek access to the withheld e-mails or a log. *See generally DR Partners v. Bd. of County Comm'rs*, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000).

[5]In light of this conclusion, we need not consider whether the district court correctly determined that of the 98 e-mails at issue here, 24 were personal in nature, 32 were of a transitory nature, and 42 were of a transitory nature and/or covered by the deliberative process privilege. *See Davin v. U.S. Dept. of Justice*, 60 F.3d 1043, 1049 (3d Cir. 1995) (explaining that under the FOIA, before considering whether requested records were correctly determined to be exempt from disclosure, a reviewing court must first examine '' 'whether the [withholding entity's] explanation was full and specific enough to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.' '' (quoting *McDonnell v. U.S.*, 4 F.3d 1227, 1242 (3d Cir. 1993))).

more importantly, the NPRA already defines precisely what is required in prelitigation situations. NRS 239.0107(1)(d) provides:

> If the governmental entity must deny the person's request to inspect or copy the public book or record because the public book or record, or a part thereof, is confidential, [the governmental entity shall] provide to the person, in writing:
>
> (1) Notice of that fact; and
>
> (2) A citation to the specific statute or other legal authority that makes the public book or record, or a part thereof, confidential.

Thus, if a state entity declines a public records request prior to litigation, it must provide the requesting party with notice and citation to legal authority that justifies nondisclosure. No log, in the form of a *Vaughn* index or otherwise, is required under NRS 239.0107(1)(d). Nevertheless, in the instant case, we conclude that the State failed to meet its prelitigation responsibilities under NRS 239.0107(1)(d).

In response to the RGJ's prelitigation request for Governor Gibbons' e-mails, the State informed the RGJ that "all [the requested] emails are either privileged or are not considered public records." Following this blanket denial, the State summarily listed *DR Partners*, California caselaw, a Nevada Attorney General Opinion, and the State of Nevada Policy on Defining Information Transmitted via E-mail as a Public Record. The State provided no explanation whatsoever as to why the cases it cited actually supported its claim of confidentiality or were anything other than superfluous. We cannot conclude that merely pinning a string of citations to a boilerplate declaration of confidentiality satisfies the State's prelitigation obligation under NRS 239.0107(1)(d)(2) to cite to "specific" authority "that makes the public book or record, or a part thereof, confidential." And, suffice it to say, the State's informal employee e-mail policy does not have the force of law, and therefore, we reject the notion that the State satisfied its prelitigation duties by citing this policy. *See generally State v. City of Clearwater*, 863 So. 2d 149, 154 (Fla. 2003) (explaining that a "Computer Resources Use Policy" could not alter the statutory definition of what constitutes a public record under Florida law). We therefore conclude that the State's prelitigation response, in the first instance, was inadequate under NRS 239.0107(1)(d).

## CONCLUSION

We reverse the district court's order denying in part the RGJ's petition for a writ of mandamus and remand this case to the district court with instructions to direct the State to provide the RGJ with

a log containing a general factual description of each of the 98 e-mails withheld and a specific explanation for nondisclosure. The district court must then determine, under the framework delineated in this opinion, whether these e-mails are subject to disclosure.

DOUGLAS, CHERRY, GIBBONS, PICKERING, HARDESTY, and PARRAGUIRRE, JJ., concur.