134 Nev., Advance Opinion 84

## IN THE SUPREME COURT OF THE STATE OF NEVADA

CLARK COUNTY SCHOOL DISTRICT,
Appellant,
vs.
LAS VEGAS REVIEW-JOURNAL,
Respondent.

No. 73525

FILED

OCT 25 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final order granting a petition for writ of mandamus concerning a public records request. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

*Affirmed in part, reversed in part, and remanded.*

Clark County School District, Office of General Counsel, and Adam D. Honey and Carlos L. McDade, Clark County,
for Appellant.

McLetchie Shell LLC and Margaret A. McLetchie and Alina M. Shell, Las Vegas,
for Respondent.

_____

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, J.:

This appeal centers on Clark County School District (CCSD) employee complaints alleging inappropriate behavior, including sexual harassment, by an elected trustee. After the Office of Diversity and Affirmative Action (ODAA) conducted an investigation into the trustee's behavior, CCSD instituted the ODAA's recommended policies and restricted the trustee's access to employees and campuses. Respondent Las Vegas

Review-Journal (Review-Journal) began running stories detailing the investigation and the complaints. The Review-Journal made a related records request to which CCSD continually delayed its response. Eventually, the Review-Journal filed a petition, and then an amended petition, for a writ of mandamus under the Nevada Public Records Act, requesting that the district court compel disclosure. The district court granted the first petition and then asserted jurisdiction over the amended petition as well. After holding a hearing on the amended petition and viewing the withheld documents in-camera, the district court filed an order granting the Review-Journal's amended writ petition and ordered disclosure, allowing for limited redaction. CCSD argues that the district court erred by ordering disclosure of CCSD's investigative materials and, alternatively, directing CCSD to provide minimally redacted investigative materials to the Review-Journal. We hold that the district court did not err by ordering disclosure of the records, but adopt a two-part, burden shifting test to determine the scope of redaction of names of persons identified in an investigative report with nontrivial privacy claims, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

CCSD officials met with Trustee Kevin Child in March of 2016 after allegations arose regarding his inappropriate behavior, including allegations of sexual harassment. The behaviors included speaking to students about suicide and other inappropriate matters, making suggestive sexual comments and gestures towards employees, including teachers, and engaging in disruptive, threatening, and inappropriate behavior at public events. The ODAA subsequently launched an investigation. The resulting ODAA recommendation states that Child's behavior resulted in what could be considered a hostile work environment under Title VII. The

SUPREME COURT
OF
NEVADA

(O) 1947A

2

recommendation further concluded that the environment was one in which Child's behavior goes unchecked. This is largely because most employees are unwilling to confront him about his behavior and/or are reluctant to file a formal complaint against him because he is perceived to be "The Boss." Based on these findings, the ODAA recommended severely limiting Trustee Child's access to district properties and employees. CCSD acted on these recommendations on December 5, 2016, implementing strict guidelines for future visits by Trustee Child and distributing those guidelines throughout CCSD via email.

That same day, a Review-Journal reporter made an initial document request. CCSD responded that it had received and was processing the request. A few days later, CCSD responded that it could not get the information requested within five days, as required by NRS 239.0107 of the Nevada Public Records Act (NPRA); however, it would hopefully have the information by December 16, 2016. CCSD then changed that date to January 9, 2017, and then to January 13, 2017. On January 26, 2017, the Review-Journal filed its first petition for writ relief asking the district court to compel CCSD to produce the requested records. CCSD eventually provided some records to the Review-Journal and, on February 9, 2017, the Review-Journal featured one of many articles on Trustee Child.

On February 10, 2017, the Review-Journal made an expanded, amended records request pursuant to NRS 239.010 of the NPRA, based on information learned from the first batch of disclosed records. The district court held a hearing on the writ petition for the initial records request on February 14, 2017. There, counsel for the Review-Journal stated that CCSD had finally provided some records; nevertheless, the issue before the

Supreme Court
of
Nevada

(O) 1947A

3

court now was "the scope of redactions." Counsel for the Review-Journal argued that, although it recognized the names of victims and people that have come forward should be protected, CCSD went too far. CCSD had redacted the names of the administrators, principals, and supervisors addressing those complaints, and the names of schools. The district court granted the Review-Journal's first writ petition and ordered that "any names of students or support staff . . . be redacted and any direct victims alleging sexual harassment." The district court also set a status check for the second records request. The first order was filed February 22, 2017.

On February 17, 2017, CCSD sent a response to the Review-Journal regarding the amended February records request, where it asserted the same privileges addressed in the prior writ hearing. In mid-March, CCSD provided the Review-Journal with a more extensive account of the types of document searches it was doing, the privileges they were asserting, and a more particularized privilege log. CCSD provided approximately 100 pages of documents between February 3, 2017, and March 3, 2017, in response to the records requests. Most of the documents contained employee complaints about Trustee Child.

On May 9, 2017, the parties appeared before the district court for a hearing on the amended request. During the hearing, counsel for CCSD and the district court discussed "what further democratic principle is furthered" by the Review-Journal's request for *all* the documents leading up to the ODAA recommendation. CCSD argued that it had already provided the Review-Journal with the policy and recommendation, as well as many emails outlining the complaints against Child. Thus, it had complied with the principles encouraging disclosure. The district court recognized the important interest in preserving victims' privacy. The

district court also reasoned that the overriding policy interest to be weighed was the fact that this matter involves the public actions of an elected official—a trustee—and CCSD's response to that elected official's actions. The district court then ordered CCSD to provide the court with a full privilege log of all responsive documents and an in-camera review of all the withheld records. On July 11, 2017, after reviewing the withheld documents in-camera and CCSD's submitted privilege log, the district court entered an order granting the writ of mandamus regarding the withheld records. That order is the subject of this appeal. CCSD specifically takes issue with disclosing documents that were part of the investigation leading up to the recommendation made by the ODAA. CCSD argues these documents are confidential by law, should be confidential on balance, or alternatively that additional redactions are necessary.

## DISCUSSION

NRS 239.010, the NPRA, provides "unless otherwise declared by law to be confidential, all public books and public records of a governmental entity must be open at all times during office hours to inspection by any person." Accordingly, the first relevant inquiry is whether CCSD's withheld documents are confidential by law. *City of Reno v. Reno Gazette-Journal*, 119 Nev. 55, 60, 63 P.3d 1147, 1149-50 (2003). "The Legislature has declared that the purpose of the NPRA is to further the democratic ideal of an accountable government by ensuring that public records are broadly accessible." *Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 877-78, 266 P.3d 623, 626 (2011). In 2007, "the Legislature amended the NPRA to provide that its provisions must be liberally construed to maximize the public's right of access." *Id.* at 878, 266 P.3d at 626 (citing NRS 239.001 (2007)). Moreover, the Legislature ensured that a state entity that wishes to "withhold records, bears the burden of proving, by a

SUPREME COURT
OF
NEVADA

(O) 1947A

5

preponderance of the evidence, that the records are confidential by law." *Id.* (citing NRS 239.0113). "[I]n the absence of a statutory provision that explicitly declares a record to be confidential, any limitations on disclosure must be based upon a broad balancing of the interests involved." *Id.* at 880, 266 P.3d at 628 (emphasis added) (citations omitted). Further, "the state entity bears the burden to prove that its interest in nondisclosure *clearly outweighs* the public's interest in access." *Id.*

CCSD contends that by ordering disclosure of CCSD's investigative materials, the district court: (1) erred under the Nevada Public Records Act by stripping CCSD employees of the rights afforded them by other confidentiality laws, both federal and administrative; and (2) erred in limiting CCSD's ability to redact. More specifically, CCSD argues that this court should reverse the district court order under: (a) federal law and federal guidelines;[1] (b) CCSD regulations; (c) the deliberative process privilege; (d) the Nevada Administrative Code (NAC);[2] and (e) the common law balancing test set forth in *Donrey of Nevada, Inc. v. Bradshaw*, 106 Nev. 630, 635, 798 P.2d 144, 147 (1990).

---

[1]CCSD has failed to prove, by a preponderance of evidence, why its investigative materials are confidential under federal law. However, CCSD's arguments regarding federal law are relevant to the balancing of interests discussed in the body of this opinion.

[2]CCSD argues that some of the investigative materials are "nonrecord materials" under NAC 239.051. However, in *Comstock Residents Association v. Lyon County Board of Commissioners*, we held that the NAC, specifically NAC 239.051, does not limit the scope of the NPRA. 134 Nev., Adv. Op. 19, 414 P.3d 318, 322 n.1 (2018) (holding that NAC 239.091 and NAC 239.051 constitute "administrative regulations pertaining to local records management programs, and do not determine the overall scope of the NPRA . . . ."). Accordingly, this argument is without merit.

A district court's grant or denial of a petition for a writ of mandamus seeking access to public records is generally reviewed for abuse of discretion. *Gibbons*, 127 Nev. at 877, 266 P.3d at 626. However, where "the petition entails questions of law, [this court] review[s] the district court's decision de novo." *Id.* "[Q]uestions of statutory construction, including the meaning and scope of a statute, are questions of law." *Reno Gazette-Journal*, 119 Nev. at 58, 63 P.3d at 1148. CCSD raises a number of arguments as to why the district court should not have ordered disclosure of its investigative materials. Insofar as CCSD's arguments center around which guidelines, regulations, and administrative codes may declare certain records to be confidential by law, we review this matter de novo. *See id.*

*The withheld documents are not confidential by law*

CCSD argues that its regulations are laws with legal effect under NRS 386.350 and, under those regulations, the documents that the district court ordered it to disclose are confidential by law. *See* NRS 386.350 ("Each board of trustees is hereby given such reasonable and necessary powers, not conflicting with the Constitution and the laws of the State of Nevada . . . ."). However, we have already indicated that such internal regulations do not limit the NPRA. Quite recently, in *Comstock Residents Association v. Lyon County Board of Commissioners*, 134 Nev., Adv. Op. 19, 414 P.3d 318, 322 (2018), we held that the NAC "do[es] not limit the reach of the NPRA, but merely establish[es] regulations for good records management practices of those local programs." Further, we emphasized that, "[t]he best practices for local government record management and what constitutes a public record for purposes of the NPRA are distinct, and we are careful not to conflate them here." *Id.* Under the rationale set forth in *Comstock Residents Association*, CCSD's regulations do not limit the scope of the NPRA. Rather, the regulations merely establish good records

SUPREME COURT
OF
NEVADA

(O) 1947A

management practices for CCSD. Ascribing a force to such regulations that limits the NPRA would create an opportunity for government organizations to make an end-run around the NPRA by drafting internal regulations that render documents confidential by law. While the regulations undoubtedly play an essential role in CCSD's internal operations for sensitive harassment issues, we hold that they do not render the withheld documents confidential by law under the NPRA.

*The district court did not abuse its discretion when, after balancing the interests, it determined that the documents should not be withheld*

"[I]n the absence of a statutory provision that explicitly declares a record to be confidential, any limitations on disclosure must be based upon a broad balancing of the interests involved, and the state entity bears the burden to prove that its interest in nondisclosure *clearly outweighs* the public's interest in access." *Gibbons*, 127 Nev. at 880, 266 P.3d at 628 (emphasis added) (citations omitted). As CCSD's remaining arguments regarding confidentiality implicate this balancing test, we review this portion of the order for an abuse of discretion. *Id.* at 877, 266 P.3d at 626; *DR Partners v. Bd. of Cty. Comm'rs of Clark Cty.*, 116 Nev. 616, 621, 6 P.3d 465, 468 (2000) ("Unless a statute provides an absolute privilege against disclosure, the burden of establishing the application of a privilege based upon confidentiality can only be satisfied pursuant to a balancing of interests . . . .").

*Deliberative process privilege*

CCSD argues that it is not required to disclose the withheld documents because the documents fall within the protections afforded under the deliberative process privilege. *See DR Partners*, 116 Nev. at 622, 6 P.3d at 469 ("The deliberative process or 'executive' privilege is one of the traditional mechanisms that provide protection to the deliberative and

 

decision-making processes of the executive branch of government."). "It is well settled that privileges, whether creatures of statute or the common law, should be interpreted and applied narrowly." *Id.* at 621, 6 P.3d at 468. Under the privilege, governmental entities may conceal public records only if the entity can prove that the relevant public records were part of a predecisional and deliberative process that led to a specific decision or policy. *Id.* at 623, 6 P.3d at 469. The agency bears the burden of establishing, with particularity, "the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *Id.* at 623, 6 P.3d at 470 (internal quotation marks and citation omitted).

CCSD argues that the withheld documents, which include the investigative file leading up to the ODAA's recommendation, are subject to the deliberative process privilege. However, the central purpose of the privilege is "protecting the decision making processes of government agencies." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks and citation omitted). Thus, the deliberative process privilege does not apply in situations where the government's actions are in question, particularly where the records may reveal a potential Title VII violation. *E.g., Anderson v. Marion Cty. Sheriff's Dep't*, 220 F.R.D. 555, 560 (S.D. Ind. 2004) ("If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that the privilege has no place in a Title VII action or in a constitutional claim for discrimination.") (quoting *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998)). "Moreover, the privilege 'should be invoked

only in the context of communications designed to directly contribute to the formulation of *important public policy*." *Id.* at 560-61 (emphasis in original) (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995)). "To extend the deliberative process privilege to a recommendation as to a particular personnel matter extends it beyond its present form to protect from disclosure what would otherwise be evidence relevant to plaintiff's complaint of discrimination." *Id.* at 561 (quoting *Waters v. U.S. Capitol Police Bd.*, 216 F.R.D. 153, 163 (D.D.C. 2003)).

Here, while one issue from the Child matter involves Child's behavior, an additional issue involves how CCSD handled the discrimination complaints and the investigation. To allow CCSD to invoke the deliberative process privilege to prevent disclosure of the investigative materials leading up to the ODAA decision would allow CCSD to shield itself from the Review-Journal's inquiry into how CCSD conducted that investigation. Allowing both disclosure, as well as redaction of victims' names, serves the competing purposes of Title VII. Doing so protects the confidentiality of the victims, while allowing inquiry into CCSD's response. Moreover, while Trustee Child is not technically an employee of CCSD, the policy imposes rules and restrictions on how other employees within the district interact with the trustee. Finally, Trustee Child's behavior, and CCSD's investigation into it, are not part of a deliberative process because there is no decision or policy CCSD is making that would invoke this privilege to begin with. Thus, the policy set forth by CCSD is not an "important public policy" but merely a "particular personnel matter" limited to a single individual under specific and isolated facts. *Id.* at 560-61. Accordingly, we hold CCSD has failed to meet its burden to demonstrate why the deliberative process privilege applies and, therefore, the district

court did not abuse its discretion by refusing to apply the privilege to this matter.

*Common law balancing test*

CCSD has failed to demonstrate that the documents are confidential as a matter of law or fall within the deliberative process privilege. We must now determine whether the balancing test, as set forth in *Gibbons,* warrants nondisclosure. A government entity cannot meet its burden for preventing disclosure by "voicing non-particularized hypothetical concerns." *DR Partners,* 116 Nev. at 628, 6 P.3d at 472-73.

CCSD contends, and presents some evidence, that employees have expressed fear of being identified or retaliated against by Trustee Child. The Review-Journal counters that there is a great public interest in transparency here, particularly in light of the unique facts of this case, where the allegations pertain to a trustee accountable only to the voters, rather than CCSD management. In fact, as the Review-Journal points out, CCSD's purpose, to protect employees, is best served by transparency and any privacy interests can be satisfied by redaction. On balance, the Review-Journal's argument is more persuasive and, while CCSD does give some evidence of individuals' fears of retaliation, it fails to demonstrate why complete nondisclosure, rather than redaction, is the better solution. Accordingly, we hold that CCSD's argument here is unpersuasive and the district court did not abuse its discretion by refusing to permit CCSD to withhold the documents in their entirety. That part of the district court's order requiring CCSD to disclose the documents is affirmed.

*Privacy interests and redaction in public record disclosure*

CCSD argues that the district court should have allowed it to redact more information. In essence, CCSD's request to redact spans from

SUPREME COURT
OF
NEVADA

(0) 1947A

withholding everything, because all facts are witness identifiers, to merely withholding names of all complainants and teacher witnesses.

The district court order reads:

> Pursuant to the Court's February 23, 2017 Order,[3] CCSD may redact the names of direct victims of sexual harassment or alleged sexual harassment, students, and support staff. The Court will then provide the documents to the Review-Journal.

Further, the district court indicated that CCSD had not "proven by a preponderance of the evidence that any interest in nondisclosure outweighs the strong presumption in favor of public access." The district court, quoting *Deseret News Publishing Co. v. Salt Lake County*, 182 P.3d 372, 383 (Utah 2008), then listed additional interests weighing against redaction.

In part, CCSD appears to be asking that this court adopt a test similar to that used in the district court's cited case, *Deseret News Publishing Co.*, 182 P.3d at 380; *see also Cameranesi v. U.S. Dep't of Defense*, 856 F.3d 626, 637 (9th Cir. 2017). Nevada has not previously adopted a test that shifts the burden of proof onto the party seeking disclosure to show the interest in the information sought. We are inclined to do so now in cases in which the nontrivial personal privacy interest of a person named in an investigative report may warrant redaction.

The *Cameranesi* test is a two-part balancing test. It first requires the government to establish a "personal privacy interest stake to

---

[3]The referenced February order reads:

> **CCSD may not make any other redactions**, and must unredact the names of schools, all administrative-level employees, including but not limited to deans, principals, assistant principals, program coordinators)[sic], and teachers.

ensure that disclosure implicates a personal privacy interest that is nontrivial or . . . more than [ ] de minimis." *Cameranesi*, 856 F.3d at 637. "Second, if the agency succeeds in showing that the privacy interest at stake is nontrivial, the requester 'must show that the public interest sought to be advanced is a significant one and that the information [sought] is likely to advance that interest.'" *Id.*

While *Cameranesi* (and *Deseret News*, 182 P.3d at 380-82) interpreted a statute providing an exception to disclosure of public records, 856 F.3d at 637-38, Nevada's common law provides a similar exception. Nevada's common law recognizes the tort of invasion of privacy for unreasonable intrusion upon the seclusion of another. *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 615, 629-36, 895 P.2d 1269, 1279-83 (1995), *overruled on other grounds by City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 650, 940 P.2d 134, 138 (1997). The purpose of the tort is to provide redress for intrusion into a person's reasonable expectation of privacy, seclusion, or solitude. *Id.* The Legislature has also recognized privacy interests in a laundry list of areas, NRS 239.010(1), including NRS Chapter 603A, defining personal information (names, social security numbers, etc.) in NRS 603A.040 that must be protected against disclosure under NRS 603A.210. The list in NRS 239.010(1) also includes confidentiality provisions in NRS 200.3771 and NRS 200.3772, confidentiality for victims of sexual offenses. On that topic, the Legislature declared, "The public has no overriding need to know the individual identity of the victim of a sexual offense . . . ." NRS 200.337(5). Given Nevada's established protection of personal privacy interests, we hold that Nevada's common law protects personal privacy interests from unrestrained disclosure under the NPRA, and we adopt the test in *Cameranesi*, 856 F.3d

at 637, to balance the public's right to information against nontrivial personal privacy interests. This approach is a logical extension of *Donrey of Nevada, Inc. v. Bradshaw*, 106 Nev. 630, 635, 798 P.2d 144, 147 (1990). In *Donrey*, this court implicitly recognized that unless a statute expressly creates an absolute privilege against public disclosure, limitations on disclosure must be based upon balancing interests of nondisclosure against the general policy of open government. 106 Nev. at 634-36, 798 P.2d at 146-47. The *Cameranesi* balancing test facilitates a court's balancing of nontrivial privacy interests against public disclosure. *See Cameranesi*, 856 F.3d at 637. For example, in this case, this test balances the nontrivial privacy interests of teachers having their names publicly disclosed with bringing attention to an issue with an elected public official within a public school district. Thus, we believe the *Cameranesi* test provides a better way to determine if a government entity should redact information in a public records request.

This test coheres with both NRS 239.0113 and *Gibbons*, 127 Nev. at 877-78, 266 P.3d at 625-26. It is merely a balancing test—in the context of a government investigation—of individual nontrivial privacy rights against the public's right to access public information. *Carlson v. U.S. Postal Serv.*, 2017 WL 3581136, at *28 (N.D. Cal. Aug. 18, 2017). We explained in *Gibbons* that NRS 239.0113 requires that the state bear the burden of proving that records are confidential. *Gibbons*, 127 Nev. at 878, 266 P.3d at 626. The *Cameranesi* test does that, but also gives the district courts a framework to weigh the public's interest in disclosure, by shifting the burden onto the public record petitioner, once the government has met its burden. This ensures that the district courts are adequately weighing the competing interests of privacy and government accountability.

 

## CONCLUSION

Here, the district court only ordered that the names of direct victims of sexual harassment or alleged sexual harassment, students, and support staff may be redacted. Problematically, this list excludes teachers or witnesses who may face stigma or backlash for coming forward or being part of the investigation. The privacy interest of these persons should be considered before disclosure of their names or other information that would identify them. Accordingly, we reverse the redaction order of the district court and remand for further proceedings consistent with this opinion.

_____, J.
Gibbons

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

Supreme Court
OF
Nevada

(O) 1947A