136 Nev., Advance Opinion 86

# IN THE SUPREME COURT OF THE STATE OF NEVADA

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT,
Appellant,
vs.
LAS VEGAS REVIEW-JOURNAL,
Respondent.

No. 78967

FILED

DEC 31 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order, certified as final under NRCP 54(b), granting in part a petition for a writ of mandamus regarding disclosure of public records. Eighth Judicial District Court, Clark County; Joseph Hardy, Jr., Judge.

*Reversed and remanded.*

Marquis Aurbach Coffing and Nicholas D. Crosby and Jacqueline V. Nichols, Las Vegas,
for Appellant.

McLetchie Law and Margaret A. McLetchie and Alina M. Shell, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, STIGLICH, J.:

In this appeal, we consider the scope of our recent opinion in *Clark County School District v. Las Vegas Review-Journal (CCSD)*, 134 Nev. 700, 429 P.3d 313 (2018). In *CCSD*, we adopted a burden-shifting test to help courts determine whether information that implicates individual privacy interests is subject to disclosure under the Nevada Public Records

20-46996

Act (NPRA). *Id.* at 708, 429 P.3d at 320. We held that when a government agency first shows that disclosure implicates a nontrivial privacy interest, the requester must then show that the information sought is likely to further a significant public interest. *Id.* at 707-08, 429 P.3d at 320 (citing *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017)).

We decided *CCSD* in the context of a sensitive investigative report, and certain language in that opinion could be read as limiting the case's application to such reports. Today, we clarify that *CCSD* is not so limited. Courts should apply the test adopted in *CCSD* whenever the government asserts a nontrivial privacy interest. In the instant case, appellant Las Vegas Metropolitan Police Department (Metro) demonstrated that its officers have a nontrivial privacy interest in their unit assignments. The district court erred in determining they did not. We therefore reverse and remand for consideration of the second step of the *CCSD* test, that is, whether disclosure of the unit assignments is likely to advance a significant public interest.

## FACTS AND PROCEDURAL HISTORY

Respondent Las Vegas Review-Journal (Review-Journal) is Nevada's largest newspaper. In order to fulfill its important function of investigative journalism, the Review-Journal has frequently requested government records, including records that the government has sought to keep confidential.[1] In early 2017, the Review-Journal was investigating how Metro handles sex-trafficking cases. To that end, the Review-Journal submitted an NPRA request for all of Metro's sex-trafficking case files,

---

[1]*See, e.g., Clark Cty. Coroner's Office v. Las Vegas Review-Journal* (*Coroner's Office*), 136 Nev. 44, 458 P.3d 1048 (2020); *CCSD*, 134 Nev. 700, 429 P.3d 313; *Las Vegas Review-Journal v. Eighth Judicial Dist. Court*, 134 Nev. 40, 412 P.3d 23 (2018); *DR Partners v. Bd. of Cty. Comm'rs*, 116 Nev. 616, 6 P.3d 465 (2000).

solicitation and trespass arrest reports, and officers' names, badge numbers, and unit assignments from 2014 through 2016.[2]

Metro provided the Review-Journal with many of the requested records, including all officers' names and badge numbers. However, Metro refused to disclose its officers' unit assignments.[3]

The Review-Journal petitioned the district court for a writ of mandamus directing Metro to provide the requested records in their entirety. Metro objected on numerous grounds. As relevant here, Metro argued that it could not disclose officers' unit assignments because such information would reveal the identities of undercover officers. After a hearing, the district court ordered discovery and meet-and-confer efforts by the parties.[4] The Review-Journal subsequently narrowed its request to include only patrol officer unit assignments, thereby excluding undercover officers.[5] Metro asserted, however, that disclosing any unit assignments—

---

[2]Thereafter, the Review-Journal also requested unit assignments from 2017. The district court deferred ruling on this additional request and it is not at issue in this appeal.

[3]On appeal, the Review-Journal argues that Metro waived any objections to disclosure by failing to cite appropriate legal authority within the five-day time limit set by NRS 239.0107(1)(d). Such arguments have since been rejected by this court in *Republican Attorneys General Ass'n v. Las Vegas Metropolitan Police Dep't*, 136 Nev. 28, 31-33, 458 P.3d 328, 331-33 (2020), and *Coroner's Office*, 136 Nev. at 48-50, 458 P.3d at 1053-54.

[4]Metro petitioned this court for emergency relief from the discovery order. We denied the petition. *Las Vegas Metro. Police Dep't v. Eighth Judicial Dist. Court*, Docket No. 76848 (Order Denying Petition, January 14, 2019).

[5]The Review-Journal continued to request other records, such as arrest reports. These records are not at issue in this appeal.

even those of patrol officers—would undermine officer safety and reveal covert officers' identities via the process of elimination.[6]

In support of its position, Metro provided declarations by Joseph Lombardo, Sheriff of Clark County and Metro's chief law enforcement officer, and Steve Grammas, President of the Police Protective Association. Both Lombardo and Grammas attested that disclosing patrol officer unit assignments would compromise officer safety by revealing where specific officers worked. Further, they attested that disclosing patrol officer unit assignments could reveal names and locations of officers assigned to covert operations.

After another hearing, the district court granted the Review-Journal's petition in part. In doing so, the court first applied the broad balancing test set forth in *Reno Newspapers, Inc. v. Gibbons*, 127 Nev. 873, 880, 266 P.3d 623, 628 (2011). The district court concluded that Metro failed to demonstrate that its interest in nondisclosure clearly outweighed the strong presumption of public access. Specifically, the court reasoned that Lombardo's and Grammas' declarations, even if believed, were too speculative to satisfy Metro's burden. Next, the district court applied the *CCSD* framework and determined that Metro's evidence did not show that the requested records implicate any cognizable privacy interest because Metro's officers are public employees who necessarily interact with the public and the community. The court also determined that the declarations were too speculative to show that disclosing unit assignments would reveal the identities of undercover officers. Accordingly, the district court ordered

---

[6]While the case was pending, this court decided *CCSD*. Metro subsequently filed supplemental briefing, arguing that the officer safety concerns which it has already raised were a privacy interest that *CCSD* protected.

Metro to disclose patrol officer unit assignments from 2014 through 2016. Metro now appeals.

## DISCUSSION

Under the NPRA, government-generated records are presumptively open to public inspection. *Gibbons*, 127 Nev. at 880, 266 P.3d at 628. This presumption may be rebutted either by an explicit statutory provision making a particular type of record confidential or, under *Gibbons*, by a "broad balancing of the interests involved," where the government must prove that "its interest in nondisclosure clearly outweighs the public's interest in access." *Id.* In *CCSD*, this court adopted a different burden-shifting test for nontrivial privacy claims asserted in response to public records requests, in which any such privacy interest is weighed against the requester's demonstration of a significant public interest in disclosure. 134 Nev. at 708, 429 P.3d at 320.

Here, Metro argues that the district court erred by failing to recognize that Metro's unit assignments implicate a nontrivial privacy interest under *CCSD*. In response, the Review-Journal argues that the *CCSD* test only applies to investigative reports. Further, in the Review-Journal's view, the district court's analysis should have ended when it concluded, under *Gibbons*, that the interest in nondisclosure did not clearly outweigh the public's right to access. Alternatively, the Review-Journal argues that even if the *CCSD* test applies here, the district court did not abuse its discretion by determining that Metro failed to show the existence of a nontrivial privacy interest.

*Standard of review*

"We review a district court's grant or denial of a writ petition for an abuse of discretion. However, we review the district court's interpretation of caselaw and statutory language de novo." *Las Vegas Metro. Police Dep't v. Blackjack Bonding*, 131 Nev. 80, 85, 343 P.3d 608, 612 (2015) (internal citation omitted). "Whether a legally recognized privacy

SUPREME COURT
OF
NEVADA

(O) 1947A

5

interest is present in a given case is a question of law," *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 657 (Cal. 1994), which we review de novo, *City of Reno v. Reno Gazette-Journal*, 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003).

Whether the *CCSD* test applies in this case concerns the interpretation of the NPRA and our NPRA jurisprudence and, therefore, is subject to our plenary review. *See Blackjack Bonding*, 131 Nev. at 85, 343 P.3d at 612. Similarly, the district court's determination that the officers lacked a nontrivial privacy interest is a conclusion of law to which we owe no deference. *See Hill*, 865 P.2d at 657; *City of Reno*, 119 Nev. at 58, 63 P.3d at 1148.[7]

*The CCSD framework applies whenever a personal privacy interest may warrant redaction*

In *CCSD*, the Review-Journal requested records related to the Clark County School District's (CCSD's) investigation of allegations of sexual harassment and other inappropriate behavior. *CCSD*, 134 Nev. at 701, 429 P.3d at 315-16. CCSD provided an initial batch of responsive documents, redacting not only the names of alleged victims, but also of administrators, principals, supervisors, and schools. *Id.* at 701-02, 429 P.3d at 316. While the Review-Journal agreed that victims' names could be redacted, it argued that CCSD's redactions "went too far." *Id.* In the ensuing litigation, CCSD took the position that it "complied with the principles encouraging disclosure" and did not need to release additional

---

[7]We disagree with the Review-Journal's contention that the district court's order involves fact-finding, which we should only review for an abuse of discretion. The district court did not find that Lombardo's and Grammas' declarations were not credible as a factual matter. Rather, it determined that, even accepting their averments as true, they failed to establish a nontrivial privacy interest. Thus, the Review-Journal conflates the threshold legal question of whether information implicates a nontrivial privacy interest with the ultimate question of whether the information is subject to disclosure.

information. *Id.* at 702, 429 P.3d at 316. The district court disagreed and ordered CCSD to release all responsive documents, redacting only the names of victims, students, or support staff. *Id.* at 702, 429 P.3d at 316-17.

On appeal, we affirmed in part and reversed in part. First, we affirmed "[t]hat part of the district court's order requiring CCSD to disclose the documents," holding the district court did not abuse its discretion under *Gibbons'* broad balancing test. *Id.* at 706-07, 429 P.3d at 319. We explained that "complete nondisclosure" was inappropriate where redaction would address the relevant privacy concerns. *Id.* Turning to the appropriate scope of those redactions, we recognized that Nevada law has "established protection of personal privacy interests" and "protects personal privacy interests from unrestrained disclosure under the NPRA." *Id.* at 708, 429 P.3d at 320.

We then adopted a two-part burden-shifting test used by federal courts to "facilitate[ ] a court's balancing of nontrivial privacy interests against public disclosure." *Id.* (citing *Cameranesi*, 856 F.3d at 637). Under that test, the government must establish that disclosure would intrude on a personal privacy interest that is nontrivial or that rises above the de minimis level. *Id.* at 707, 429 P.3d at 320. Upon such a showing, the burden shifts to the requesting party to show that disclosure is likely to advance a significant public interest. *Id.* at 707-08, 429 P.3d at 320.

Applying this test, we noted that the district court failed to consider the privacy interests of "teachers or witnesses who may face stigma or backlash for coming forward or being part of the investigation." *Id.* at 709, 429 P.3d at 321. We therefore remanded for the district court to consider those privacy interests. *Id.*

The Review-Journal urges this court to apply *CCSD* narrowly and to limit its use to investigative reports. We disagree that *CCSD* should be cabined to its particular facts in this way. As noted, the *CCSD* test is

grounded in Nevada's "established protection of personal privacy interests." *Id.* at 708, 429 P.3d at 320. Such interests arise in various contexts. For instance, in *Cameranesi*, the court recognized that personnel and medical files may be shielded from public disclosure to prevent an unwarranted invasion of personal privacy. 856 F.3d at 637 (applying 5 U.S.C. § 552(b)(6)).

In *CCSD*, we observed that although the *Cameranesi* court interpreted a federal statute, Nevada law similarly recognizes privacy rights in "a laundry list of areas." 134 Nev. at 708, 429 P.3d at 320. Therefore, we conclude that it would be incongruous to restrict the *CCSD* test to investigative reports. Indeed, as the United States Supreme Court has aptly stated, by "requir[ing] the person requesting the information to establish a sufficient reason for the disclosure," courts "give practical meaning" to privacy interests. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). In sum, while *CCSD* addressed investigative reports, it did not foreclose the application of the test we adopted therein to other types of records containing private information.

Accordingly, we hold that the district court did not err by applying the *CCSD* test to determine whether to disclose the unit assignments. Consequently, the district court properly considered whether Metro had demonstrated that the unit assignments implicated a nontrivial personal privacy interest. However, we clarify that the district court was not required to apply the *Gibbons* balancing test to the unit assignments. Although both *Gibbons* and *CCSD* are balancing tests, *CCSD* supplies a refined framework to analyze privacy claims. *CCSD*, 134 Nev. at 709, 429 P.3d at 321. In contrast, *Gibbons* applies to claims against disclosure that are unrelated to personal privacy.

*Metro demonstrated the existence of a nontrivial privacy interest*

Having determined that the *CCSD* test applies to the privacy claim asserted here, we now turn to whether Metro established that

SUPREME COURT
OF
NEVADA

(O) 1947A

8

disclosure of unit assignments implicated its officers' nontrivial privacy interests. To be "nontrivial," the asserted privacy interest must be more than de minimis, but is *not* required to be "*substantial.*" *Cameranesi*, 856 F.3d at 641-42 (emphasis in original).

Although this court has not previously had the occasion to address the privacy interests asserted here, ample persuasive authority shows that "[t]he avoidance of harassment is a cognizable privacy interest." *Cameranesi*, 856 F.3d at 639 (alteration in original) (quoting *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1026 (9th Cir. 2008)). The Ninth Circuit Court of Appeals has explained that the invasion of privacy need not be a certainty or have occurred in the past to justify nondisclosure. *Civil Beat Law Ctr. for the Pub. Interest, Inc. v. Ctrs. for Disease Control & Prevention*, 929 F.3d 1079, 1091-92 (9th Cir. 2019). Like these courts, we conclude that the government should not be forced to wait for a serious harm from an unwarranted intrusion of personal privacy to occur in order to justify nondisclosure.[8]

Courts have consistently shielded information about the location and identities of government employees when disclosure could subject those employees to harassment. *Forest Service Employees* is instructive. At issue there were the identities of federal employees who had responded to a wildfire that killed two firefighters. 524 F.3d at 1022. The Ninth Circuit explained that "individuals do not waive all privacy interests . . . simply by taking an oath of public office." *Id.* at 1025 (alteration in original) (quoting *Lissner v. U.S. Customs Serv.*, 241 F.3d

---

[8]Although the Review-Journal argues that, under *Gibbons*, Metro cannot use hypothetical concerns to justify nondisclosure, we emphasize that the *CCSD* test is distinct from the inquiry under *Gibbons*. Moreover, the government would surely not meet its burden, even under *CCSD*, by merely asserting a speculative or implausible harm. But real risks should not be discounted as "hypothetical" merely because they have not crystallized into actual harm.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

1220, 1223 (9th Cir. 2001)). Further, "the employees possessed privacy interests in avoiding the embarrassment, shame, stigma, and harassment that would arise from their public association with the incident." *Id.* at 1026 (internal quotation marks omitted).

Likewise, in *Civil Beat Law Center*, the Ninth Circuit held that employees of the Centers for Disease Control (CDC) had a nontrivial privacy interest in their names and contact information. 929 F.3d at 1092. There, the requester sought information related to the inspection of a laboratory that handled dangerous biological agents. *Id.* at 1090-91. Even though a directory of the employees in the inspection agency was already publicly available, the court held that the "additional location-specific risk" from releasing information regarding the laboratory inspection was sufficient "to meet the low, 'nontrivial' privacy interest threshold." *Id.* at 1092.

Law enforcement officers in particular have a privacy interest in maintaining their anonymity and the confidentiality of their work assignments where disclosure poses a risk of harassment, endangerment, or similar harm. *See, e.g., Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1198 (10th Cir. 2011); *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1166 (3d Cir. 1995); *Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 299 (D.D.C. 2011); *Matter of Ruberti, Girvin & Ferlazzo v. N.Y. State Div. of State Police*, 641 N.Y.S.2d 411, 415 (App. Div. 1996).

Guided by the foregoing principles, we conclude that Metro's officers have a nontrivial privacy interest in their unit assignments. Crucially, although the district court suggested otherwise, the officers did not surrender their privacy interests by swearing an oath of public office. Metro's evidence established the real possibility that disclosure of the unit assignments could subject officers to harassment and retaliation. Moreover, these risks were pronounced because the unit assignments reveal the locations of officers. While we emphasize that location-specific

SUPREME COURT
OF
NEVADA

(O) 1947A

10

information about a public employee is not automatically confidential, it can heighten the risk of harassment and other harm and thereby establish a nontrivial privacy interest.

The Review-Journal invites us to follow *King County v. Sheehan*, 57 P.3d 307 (Wash. Ct. App. 2002), but that case is readily distinguishable. There, the court held that there was no privacy interest in the names of certain police officers that were "released on a regular basis." *Id.* at 318. It specifically rejected the argument that "public identification could lead to harassment and danger in [the officers'] personal lives." *Id.* at 317. However, the court noted the distinction between names and "employee identification numbers," because release of the latter could lead to "impermissible invasions of privacy." *Id.* (quoting *Tacoma Pub. Library v. Woessner*, 951 P.2d 357, 365 (Wash. Ct. App. 1998)).

Here, in contrast, Metro has *already* released not only its officers' names, but also their badge numbers. Metro is only objecting to disclosure of its officers' unit assignments. That information is not released on a regular basis and could lead to invasions of privacy even if the disclosure of names alone would not. Therefore, we hold that the district court erred in determining that Metro failed to establish that its officers have a nontrivial privacy interest in their unit assignments.

This determination does not end the inquiry. On remand, the district court should consider whether the Review-Journal can meet its burden under prong two of *CCSD*—that is, whether the information sought is likely to advance a significant public interest.

## CONCLUSION

We hold that the framework we adopted in *CCSD* is one of general application and not limited to investigative reports. When the government seeks to withhold specific information on the basis of a privacy interest, the district court must first determine whether disclosure implicates a nontrivial privacy interest. In doing so, the court should

consider the risks of harassment or other harm, though the government need not prove that such harms are certain to occur. Here, because the district court erred in determining that Metro's officers lack a nontrivial privacy interest in their unit assignments, we reverse and remand for further proceedings consistent with this opinion.

                                                 _____, J.
                                         Stiglich


We concur:

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A